601 A.2d 1149

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
DAVID DILLIHAY, DEFENDANT-RESPONDENT.

Argued September 11, 1991—Decided January 27, 1992.

*Michael J. Williams,* Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

*Susan Green,* Assistant Deputy Public Defender, argued the cause for respondent (*Wilfredo Caraballo,* Public Defender, attorney; *Ms. Green* and *Al Glimis,* Assistant Deputy Public Defender, of counsel and on the briefs).

The opinion of the Court was delivered by

STEIN, J.

In this case, as in *State v. Brana,* 127 *N.J.* 64, 601 *A.*2d 1160 (1992), also decided today, we consider the validity of the anti-merger provision of *N.J.S.A.* 2C:35–7, which prohibits distribution of controlled dangerous substances within a school zone, as applied to a defendant who committed first- and second-degree violations of *N.J.S.A.* 2C:35–5, the provision of New Jersey's Controlled Dangerous Substances Act (the Act) that generally prohibits the manufacturing, distribution, or dispensing of controlled dangerous substances.

Violations of *N.J.S.A.* 2C:35–5 (Section 5 of the Act) range from first-to fourth-degree crimes; only first-degree violations carry a period of parole ineligibility. *N.J.S.A.* 2C:35–5(b)(1); 2C:35–5(b)(6). *N.J.S.A.* 2C:35–7 (Section 7 of the Act) provides that any violation of Section 5 committed within 1,000 feet of a school zone constitutes a separate third-degree offense requiring imposition of a term of parole ineligibility. In addition, Section 7 bars merger of school-zone convictions with convictions under Section 5.

In *State v. Gonzalez,* 123 *N.J.* 462, 588 *A.*2d 816 (1991), we held that principles of statutory construction require third- and fourth-degree Section 5 offenses to merge into Section 7 (school-zone offenses), but explicitly reserved decision regarding whether first- or second-degree Section 5 convictions merge with school-zone offenses. *Id.* at 464, 588 *A.*2d 816.

Here, we decide the constitutional issues not reached in *Gonzalez*, and conclude that subjecting a defendant to punishment for both first- or second-degree Section 5 offenses and a related school-zone offense would violate federal double-jeopardy principles. We therefore construe the statute in order both to preserve its constitutionality and to fulfill the apparent intent of the Legislature. *State v. LeFurge*, 101 *N.J.* 404, 423, 502 *A.*2d 35 (1986); *State v. Profaci*, 56 *N.J.* 346, 350, 266 *A.*2d 579 (1970). We hold that convictions for school-zone offenses must merge into convictions for related first- or second-degree Section 5 offenses, but that in such cases a mandatory minimum sentence no less severe than that required by the school-zone statute should nevertheless be imposed on defendants convicted of a Section 5 offense.

### I

The parties do not contest the relevant facts. David Dillihay was arrested by undercover detectives investigating possible narcotics activity at an Atlantic City bar located within 1,000 feet of a school zone. The detectives observed Dillihay drop a film container as one of the detectives approached him. The five tin foil packets that were in the container held phencyclidine-coated marijuana. Dillihay was charged with and convicted of the following offenses:

1. possession of less than one ounce of marijuana with intent to distribute (*N.J.S.A.* 2C:35–5a(1) and –5b(12)) (fourth degree);

2. possession of marijuana with intent to distribute within a school zone (*N.J.S.A.* 2C:35–7) (third degree);

3. possession of phencyclidine (*N.J.S.A.* 2C:35–10a(1)) (third degree);

4. possession of phencyclidine with intent to distribute (*N.J.S.A.* 2C:35–5a(1) and –5b(7)) (second degree); and

5. possession of phencyclidine with intent to distribute within a school zone (*N.J.S.A.* 2C:35–7) (third degree).

Observing that Dillihay's Section 5 and Section 7 offenses constituted only a single criminal transaction, the Law Division merged the school-zone convictions with the Section 5 convictions. The court determined that to uphold both convictions

would violate fundamental principles of due process, if not federal or state guarantees against double jeopardy, but observed that the Legislature intended that defendants convicted of a school-zone offense be required to serve sentences with a period of parole ineligibility. In accordance with Section 5, the trial court sentenced Dillihay to concurrent terms of seven years and fifteen months for his convictions arising from possession of phencyclidine and marijuana, and also imposed the mandatory minimum term required by Section 7. Dillihay's aggregate sentence was seven years, with two years of parole ineligibility.

The Appellate Division affirmed, 241 *N.J.Super.* 553, 556, 575 *A.*2d 876 (1990), relying in part on Judge Skillman's dissent in *State v. Gonzalez,* 241 *N.J.Super.* 92, 99, 574 *A.*2d 487 (App. Div.1990). The majority of the *Dillihay* panel concluded that the Section 5 and Section 7 offenses must merge, but that the mandatory minimum sentence required by Section 7 should be imposed. 241 *N.J.Super.* at 556, 575 *A.*2d 876. The dissenting member was of the view that the Legislature had intended to create two separate crimes that would not merge. *Ibid.* The State appeals as of right to this Court.

## II

■ In addressing questions of merger, we have recognized that merger is rooted in the established principle that " 'an accused [who] has committed only one offense * * * cannot be punished as if for two.' " *State v. Cole,* 120 *N.J.* 321, 325–26, 576 *A.*2d 864 (1990) (citing *State v. Miller,* 108 *N.J.* 112, 116, 527 *A.*2d 1362 (1987); *State v. Davis,* 68 *N.J.* 69, 342 *A.*2d 841 (1975)). We have acknowledged that the question whether to merge convictions implicates a defendant's substantive constitutional rights, although we have not specified whether those rights are rooted in principles of double jeopardy, due process, or some other legal tenet. *Cole, supra,* 120 *N.J.* at 327, 576 *A.*2d 864; *State v. Truglia,* 97 *N.J.* 513, 522, 480 *A.*2d 912

(1984); *State v. Best,* 70 *N.J.* 56, 61, 356 *A.*2d 385 (1976); *State v. Davis, supra,* 68 *N.J.* at 77, 342 *A.*2d 841 (1975). We have eschewed a mechanical approach to merger issues in favor of the flexible approach advocated in *State v. Davis, id.* at 81, 342 *A.*2d 841, in which a court considering whether to merge convictions should focus on the elements of the crime, the Legislature's intent in enacting the statutes, and the specific facts of each case. *Cole, supra,* 120 *N.J.* at 327, 576 *A.*2d 864. Nonetheless, multiple convictions for related offenses cannot stand in contravention of constitutional principles. Therefore, we examine defendant's claim that to allow separate convictions under both Section 5 and the school-zone statute would violate double-jeopardy principles.

We have consistently interpreted New Jersey's constitutional double-jeopardy protection, *N.J. Constitution,* article I, paragraph 11, as co-extensive with the guarantee of the federal constitution. *U.S. Const.* amend. V; *State v. Churchdale Leasing,* 115 *N.J.* 83, 107–08, 557 *A.*2d 277 (1989); *State v. DeLuca,* 108 *N.J.* 98, 102, 527 *A.*2d 1355 (1987); *State v. Soto,* 241 *N.J.Super.* 476, 479, 575 *A.*2d 501 (App.Div.1990). We have not determined, nor need we do so here, whether or to what extent New Jersey's constitutional guarantee affords greater protection than does the federal constitution. *Churchdale Leasing, supra,* 115 *N.J.* at 108, 557 *A.*2d 277. To evaluate whether to convict a defendant for violating both Section 5 and the school-zone statute by the same conduct is permissible, we first examine the federal law of double jeopardy.

Federal double-jeopardy principles require a two-step analysis to determine whether multiple punishment violates double jeopardy. *Missouri v. Hunter,* 459 *U.S.* 359, 368–69, 103 *S.Ct.* 673, 679, 74 *L.Ed.*2d 535, 543–44 (1983); *Albernaz v. United States,* 450 *U.S.* 333, 344, 101 *S.Ct.* 1137, 1145, 67 *L.Ed.*2d 275, 285 (1981); *Blockburger v. United States,* 284 *U.S.* 299, 304, 52 *S.Ct.* 180, 182, 76 *L.Ed.* 306, 309 (1932). The first step requires the court to consider whether the legislature

intended to impose multiple punishments. *Albernaz, supra,* 450 *U.S.* at 344, 101 *S.Ct.* at 1145, 67 *L.Ed.*2d at 285. The federal double-jeopardy guarantee "serves principally as a restraint on courts and prosecutors." *Brown v. Ohio,* 432 *U.S.* 161, 165, 97 *S.Ct.* 2221, 2225, 53 *L.Ed.*2d 187, 193 (1977). Therefore, "[w]here * * * a legislature specifically authorizes cumulative punishment under two statutes, * * * a court's task of statutory construction is at an end * * * and the trial court or jury may impose cumulative punishment." *Missouri v. Hunter, supra,* 459 *U.S.* at 368–69, 103 *S.Ct.* at 679, 74 *L.Ed.*2d at 544.

If, however, the legislative intent to allow multiple punishment is not clear, the Court must then apply the test articulated in *Blockburger, supra,* 284 *U.S.* at 304, 52 *S.Ct.* at 182, 76 *L.Ed.* at 309, to determine whether the defendant is unconstitutionally faced with multiple punishment for the "same" offense. In the absence of legislative intent to authorize cumulative punishment, to punish a defendant twice for the same offense is unconstitutional. *Missouri v. Hunter, supra,* 459 *U.S.* at 366, 103 *S.Ct.* at 678, 74 *L.Ed.*2d at 542 (citing *Whalen v. United States,* 445 *U.S.* 684, 691, 100 *S.Ct.* 1432, 1437, 63 *L.Ed.*2d 715, 723 (1980)). Under *Blockburger,* two offenses are the same unless "each [offense] requires proof of an additional fact which the other does not." 284 *U.S.* at 304, 52 *S.Ct.* at 182, 76 *L.Ed.* at 309.

In New Jersey, we have applied the analysis set forth in *Missouri v. Hunter* and *Blockburger v. United States* to cases involving double-jeopardy questions. See *Churchdale Leasing, supra,* 115 *N.J.* at 103–07, 557 *A.*2d 277; *State v. DeLuca,* 108 *N.J.* 98, 527 *A.*2d 1355 (1987); *State v. Dively,* 92 *N.J.* 573, 578–83, 458 *A.*2d 502 (1983). To determine whether the non-merger provision of the school-zone statute violates double jeopardy, we first inquire whether the Legislature clearly intended to permit multiple punishment for violations of both Section 5 and the school-zone statute.

The language of the school-zone statute that controls merger states that

[n]otwithstanding the provisions of N.J.S. 2C:1–8 or any other provisions of law, a conviction arising under this section *shall not merge* with a conviction for a violation of * * * N.J.S. 2C:35–5 * * * or *N.J.S.* 2C:35–6. [*N.J.S.A.* 2C:35–7 (emphasis added).]

On its face, that provision prohibits merger of a school-zone conviction with any other violation of Section 5. Nevertheless, whether the statutory language contemplates multiple punishments for convictions under both Section 5 and Section 7, or whether it serves only to prohibit merger for sentencing purposes in order that the mandatory minimum sentence authorized in Section 7 be preserved is unclear.

Had the Legislature intended multiple punishment, it could have explicitly authorized consecutive sentencing for related Section 5 and Section 7 offenses. However, Section 7's non-merger provision neither mandates nor refers to consecutive sentencing, leaving to the discretion of the sentencing court whether to impose single or multiple punishment for convictions of related Section 5 and Section 7 offenses. In such cases courts typically have imposed concurrent rather than consecutive sentences. See *State v. Graham,* 245 *N.J.Super.* 257, 259, 584 *A.*2d 878 (App.Div.1991); *State v. Gonzalez, supra,* 241 *N.J.Super.* at 95, 574 *A.*2d 487; *State v. Anaya,* 238 *N.J.Super.* 31, 33, 568 *A.*2d 1208 (App.Div.1990); *State v. Blow,* 237 *N.J.Super.* 184, 186, 567 *A.*2d 253 (App.Div.1989). *But see State v. Soto,* 241 *N.J.Super.* 476, 477, 575 *A.*2d 501 (App.Div. 1990) (imposing consecutive sentencing). The normative choice of concurrent rather than consecutive sentences suggests that related violations of Section 5 and Section 7 do not ordinarily justify consecutive sentences, *see State v. Yarbough,* 100 *N.J.* 627, 643–44, 498 *A.*2d 1239 (1985), and that the Legislature has not expressed a clear preference for consecutive sentences.

In determining whether the language of Section 7 clearly authorizes multiple punishment for violations of Section 5 within a school zone, we also note that the reported cases are

divided in their interpretation of the non-merger clause. Although some Appellate Division panels interpreted the provision to prohibit merger completely, see *Graham, supra,* 245 *N.J.Super.* at 261–62, 584 *A.*2d 878; *Gonzalez, supra,* 241 *N.J.Super.* at 97, 574 *A.*2d 487; *Anaya, supra,* 238 *N.J.Super.* at 39, 568 *A.*2d 1208; *Blow, supra,* 237 *N.J.Super.* at 191, 567 *A.*2d 253, others have concluded that merger is permissible under certain circumstances despite the statutory language. See *Dillihay, supra,* 241 *N.J.Super.* at 556, 575 *A.*2d 876; *Soto, supra,* 241 *N.J.Super.* at 478, 575 *A.*2d 501. Our recent decision in *Gonzalez, supra,* 123 *N.J.* 462, 588 *A.*2d 816, also reflects the view that the Legislature did not clearly intend to bar merger of related Section 5 and Section 7 convictions. There we held that third- and fourth-degree Section 5 convictions may merge into convictions under Section 7. *Id.* at 464, 588 *A.*2d 816. This divergence of judicial views concerning the non-merger provision suggests that the legislative intent, whatever it may have been, was not expressed with the clarity required by *Missouri v. Hunter, supra,* 459 *U.S.* at 368–69, 103 *S.Ct.* at 679, 74 *L.Ed.*2d at 542 (requiring that a legislature "specifically authorize[ ] cumulative punishment" under the statute).

In addition, we are constrained by the rule that where the legislative intent is unclear, the United States Supreme Court "has steadfastly insisted that 'doubt will be resolved against turning a single transaction into multiple offenses.' " *Simpson v. United States,* 435 *U.S.* 6, 15, 98 *S.Ct.* 909, 914, 55 *L.Ed.*2d 70, 75 (1978) (citing *Bell v. United States,* 349 *U.S.* 81, 84, 75 *S.Ct.* 620, 622, 99 *L.Ed.* 905 (1955)). Accordingly, we conclude that the non-merger language in Section 7 does not sufficiently evidence a clear legislative intent to authorize multiple punishment for related convictions under Section 5 and Section 7.

We proceed to the *Blockburger* test to determine whether the statute unconstitutionally authorizes multiple punishment for the "same" offense. Under *Blockburger,* two offenses are the "same" unless "each [offense] requires proof of an additional

fact [that] the other does not." *Blockburger, supra,* 284 *U.S.* at 304, 52 *S.Ct.* at 182, 76 *L.Ed.* at 309. The language of the school-zone statute provides that "[a]ny person who violates [*N.J.S.A.* 2C:35–5] * * * while on any school property * * * or within 1,000 feet of such school property * * * is guilty of a crime of the third degree." *N.J.S.A.* 2C:35–7. We note that Section 7 requires proof of a fact not required to be proved under Section 5, that the offense occurred on or within 1,000 feet of school property. However, because the State must prove *all* elements of a Section 5 offense in order to establish a violation of Section 7, the Section 5 offense obviously does not require proof of any additional facts beyond those that establish a violation of the school-zone statute. We must therefore conclude that the two offenses are "the same" for purposes of the *Blockburger* analysis, thereby precluding multiple punishments under both Section 5 and the school-zone statute. *Cf. Illinois v. Vitale,* 447 *U.S.* 410, 419–20, 100 *S.Ct.* 2260, 2267, 65 *L.Ed.*2d 228, 237–38 (1980) (double jeopardy bars subsequent prosecution if one offense is always a necessary element of the other); *Churchdale Leasing, supra,* 115 *N.J.* at 106–07, 557 *A.*2d 277 (multiple punishment violates double jeopardy when the evidence that proves one offense necessarily establishes the other); *Dively, supra,* 92 *N.J.* at 582–83, 458 *A.*2d 502 (double jeopardy bars multiple convictions when evidence that proves one offense also establishes the other). Thus, federal double-jeopardy principles lead inevitably to the conclusion that to allow multiple punishments for related convictions under Section 5 and Section 7 of the Act is constitutionally impermissible.

New Jersey's statutory provision governing convictions for related offenses is consistent with that analysis. That provision, *N.J.S.A.* 2C:1–8, provides that a defendant may not be convicted of more than one offense if "one offense is included in the other." *N.J.S.A.* 2C:1–8(a)(1). That occurs when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged."

*N.J.S.A.* 2C:1–8(d)(1). Under that statutory standard, Section 5 would be an offense "included" within Section 7, because it is established by proof of the same facts as a Section 7 offense. Thus, the Code of Criminal Justice would also prohibit multiple convictions for related Section 5 and Section 7 offenses were it not for the express provision in Section 7 excluding the merger bar from the restrictions of *N.J.S.A.* 2C:1–8.

### III

We need not invalidate the school-zone statute on constitutional grounds, however, if the non-merger language can be understood in a manner that would be consistent with constitutional principles. As we said in *Profaci, supra,* 56 *N.J.* at 350, 266 *A.*2d 579, "[e]ven though a statute may be open to a construction which would render it unconstitutional or permit its unconstitutional application, it is the duty of this Court to so construe the statute as to render it constitutional if it is reasonably susceptible to such interpretation." *Accord State v. LeFurge,* 101 *N.J.* 404, 423, 502 *A.*2d 35 (1986); *Town Tobacconist v. Kimmelman,* 94 *N.J.* 85, 104, 462 *A.*2d 573 (1983). In determining whether a statute is susceptible to a construction that sustains its constitutionality, our primary focus must be on whether the Legislature would prefer the statute to survive as construed. *Right to Choose v. Byrne,* 91 *N.J.* 287, 311, 450 *A.*2d 925 (1982); *New Jersey Bd. of Higher Educ. v. Board of Directors of Shelton College,* 90 *N.J.* 470, 478, 448 *A.*2d 988 (1982); *Schmoll v. Creecy,* 54 *N.J.* 194, 202, 254 *A.*2d 525 (1969). That leads us to consider further the legislative intent underlying the school-zone statute.

We have observed that a primary objective of the school-zone statute is to impose a mandatory sentence on a defendant who commits a Section 5 violation in a school zone, and to assure that the mandatory sentence would survive the merger of a school-zone offense with a Section 5 offense that did not carry a mandatory minimum. *Gonzalez, supra,* 123 *N.J.* at 464, 588

*A.*2d 816 (citing *Gonzalez, supra,* 241 *N.J.Super.* at 99–108, 574 *A.*2d 487 (Skillman, J., dissenting)). The school-zone statute is an important feature of New Jersey's Comprehensive Drug Reform Act of 1986, *L.*1987, *c.* 101, enacted to combat drug use and distribution and reflecting the Legislature's intention to impose heavy penalties on drug offenders. New Jersey Supreme Court Task Force on Drugs and the Courts, April 1991 at 5. In promulgating the school-zone statute, the Legislature intended to keep school zones drug-free in order that schools can effectively educate children about the dangers of drug use. Official Commentary to the Comprehensive Drug Reform Act, *L.*1987, *c.* 106.

The mandatory sentence associated with the school-zone offense is of particular significance. In prohibiting the merger of convictions for Section 7 offenses with convictions for related Section 5 offenses, the Legislature's apparent concern was to assure the preservation of the period of parole ineligibility deemed essential to the school-zone statute. Accordingly, the commentary accompanying the school-zone statute states in part that

> [p]unishment for violation of this section [of the school-zone statute], moreover, does not merge for sentencing purposes with punishment imposed for the underlying violation of *N.J.S.A.* 2C:35–5a, since this section responds to a separate and distinct danger apart from drug distribution generally * * *. *This provision is thus designed to ensure the imposition of the mandatory term of imprisonment * * *.*
>
> [Official Commentary to the Comprehensive Drug Reform Act, *L.*1987, *c.* 101 (emphasis added).]

The official commentary specifically noted that the mandatory minimum sentence should be preserved "even where the defendant was convicted of a second degree offense." *Ibid.* Other sources of the school-zone statute's legislative history also reflect the concern that a person convicted under the school-zone statute be sentenced to a mandatory minimum term of imprisonment. S. 2449, Statement to Senate, p. 2 (July 29, 1986); N.J.Senate Law, Public Safety and Defense Committee, Statement to S. 2449, p. 1 (Aug. 13, 1986); N.J.Assembly

Judiciary Committee, Statement to S. 2449, p. 1 (Dec. 8, 1986). As one commentator observed, "although the section theoretically creates a separate offense, its real function is to require a minimum term as part of the sentence of certain offenders who would normally be prosecuted under 2C:35-5." John M. Cannel, *New Jersey Criminal Code Annotated,* Comment 3 to *N.J.S.A.* 2C:35-7 at 555 (1991). The evidence quite compellingly demonstrates that the primary objective of Section 7's non-merger provision was to insure that those who distribute drugs within a school zone receive the mandatory minimum sentence prescribed by Section 7. Further, the Drug Enforcement and Demand Reduction (DEDR) penalties, *N.J.S.A.* 2C:35-15, associated with a Section 5 conviction do not require a different result. Contrary to the position espoused by our dissenting colleagues, *post* at 61–62, 601 *A.*2d at 1158–1159, not one word of the legislative history underlying Section 7 suggests that Section 7's non-merger provision was inspired by a legislative determination to preserve separate DEDR penalties. Accordingly, we conclude that that legislative purpose is reconcilable with a construction of Section 7's no-merger provision that permits merger of Section 7 offenses into first- or second-degree Section 5 offenses as long as the period of parole ineligibility mandated by Section 7 is preserved.

Although in *Gonzalez* we required the merger of the defendant's third-degree Section 5 conviction into his Section 7 conviction, we cannot apply that procedure to these offenses. To do so would achieve the anomalous result of merging a first- or second-degree Section 5 violation into a third-degree school-zone violation. *See State v. Hammond,* 231 *N.J.Super.* 535, 545, 555 *A.*2d 1169 (App.Div.) (crime of greater degree or culpability cannot merge into crime of lesser degree or culpability), *certif. denied,* 117 *N.J.* 636, 569 *A.*2d 1336 (1989). We recognize that ordinarily the offense with fewer elements would merge into the offense with greater elements. We depart from that principle in this case because the offense with fewer elements is

more severe, and we assume that the Legislature would prefer that that conviction survive.

We base our decision on a construction that effectuates the legislative intent and simultaneously avoids the constitutional issue posed by non-merger. Accordingly, we hold that the school-zone statute must be construed to allow merger of school-zone offenses into first- and second-degree Section 5 offenses provided that a defendant convicted of a drug offense in a school zone is sentenced to no less than the mandatory minimum sentence provided in the school-zone statute. We acknowledge an apparent inconsistency in preserving the mandatory minimum sentence authorized by Section 7 in the context of our holding that the Section 7 conviction must merge into the Section 5 conviction. That result, however, reflects the Legislature's clear intent to impose an enhanced punishment for those who violate Section 5 while in a school zone. Thus, Section 5 should be construed and understood to require imposition of Section 7's mandatory minimum term as part of the sentence imposed on any defendant convicted of a second-degree Section 5 offense and a related Section 7 offense; in respect of first-degree Section 5 convictions, the statute expressly provides for a mandatory minimum sentence.

The dissenting opinion's statement that "the majority permits a heroin pusher in a school yard to receive no greater punishment than a heroin pusher in a high-crime area," *post* at 56, 601 *A.*2d at 1156, is plainly inaccurate. As a result of the Court's holding today, a defendant who committed a second-degree Section 5 offense in a school zone would be subject to the legislatively-mandated sentence enhancement; a defendant who committed the same crime outside a school zone would not be subject to such punishment. In addition, a defendant who committed a first-degree Section 5 offense in a school zone would be subject to the mandatory minimum imposed by that section, the identical punishment that would be imposed under the dissent's formulation, if, as is usually the case, the sentences are imposed concurrently. *See Yarbough, supra*, 100

*N.J.* at 643–44, 498 *A.*2d 1239. We note that the Legislature has previously enacted other sentencing schemes that reflect its purpose to impose enhanced sentences in order to deter criminal activity that poses a special risk to society. *See N.J.S.A.* 2C:43–6(c) (Graves Act requires imposition of mandatory minimum sentence for convictions of certain crimes committed with firearm). We conclude that the legislative purpose in enacting the school-zone statute can best be served, consistent with double-jeopardy principles, by requiring merger of Section 7 convictions into related first- or second-degree Section 5 convictions and construing Section 5 and Section 7 to require that any sentence imposed on a defendant convicted of Section 5 offenses within a school zone must include a mandatory minimum sentence no less severe than that set forth in Section 7 of the Act.

The judgment of the Appellate Division is affirmed.

GARIBALDI, J., dissenting.

The Legislature clearly intended to create drug-free school zones through enactment of *N.J.S.A.* 2C:35–7 (Section 7). To accomplish that task, the Legislature made drug offenses carried out in school zones separately-punishable crimes, and increased mandatory-minimum penalties for drug transactions in school zones. In eliminating the separate school-zone violations through the doctrine of merger, the Court has turned the law on its head and created free-crime zones out of school yards.

Despite its assertion to the contrary, *ante* at 55, 601 *A.*2d at 1155, the majority permits a heroin pusher in a school yard to receive no greater punishment than a heroin pusher in a high-crime area. Under the Court's opinion, a heroin pusher convicted of both a first-degree Section 5 crime and a third-degree Section 7 crime would receive a maximum parole-ineligibility term of only five years, one conviction, one Drug Enforcement and Demand Reduction (DEDR) penalty, one fine, and one Criminal Laboratory Analysis (CLA) fee. Under my result such

an offender could receive a parole-ineligibility term of at least five years for his Section 5 conviction, in addition to a consecutive ineligibility term of three years for his Section 7 conviction, two separate convictions, two separate DEDR penalties, two separate fines, and two separate CLA fees. The majority ignores the fact that the non-merger provision does more than simply preserve the mandatory sentence for Section 7 offenses; it also preserves the underlying conviction, a significant factor if defendant again violates the law, and the additional substantial DEDR penalties, fines and fees that are imposed after each separate conviction.

The late Senator Graves, sponsor of the Drug–Free School Bill, stated that with this statute, "We're going to say to drug dealers: 'Stay away from our kids, stay away from our schools.'" *State v. Gonzalez*, 123 *N.J.* 462, 470, 588 *A.*2d 816 (1991) (O'Hern, J., dissenting). By assuming that the Legislature intended imposition of no greater penalty for a heroin sale in a school yard than for a heroin sale anywhere else, the majority eliminates that all-important message.

The majority's result contravenes the Legislature's clear intent as expressed by the plain language of Section 7, its legislative history, and simple common sense and logic. The Legislature never intended the convoluted result reached by the Court. No constitutional principle requires such an inversion of legislative purpose.

I

Fundamental principles of statutory construction require that in interpreting any statute, courts initially consider its plain language. *Kimmelman v. Henkels & McCoy, Inc.*, 108 *N.J.* 123, 128, 527 *A.*2d 1368 (1987). The non-merger language of Section 7 could not be clearer:

> Notwithstanding the provisions of *N.J.S.* 2C:1–8 or any other provisions of law, a conviction arising under this section *shall not merge with a conviction for* a violation of * * * *N.J.S.A. 2C:35–5* * * * or *N.J.S.A. 2C:35–6*. [*N.J.S.A.* 2C:35–7 (emphasis added).]

"No merger" means "no merger." A section 7 conviction is not to merge *with* any Section 5 conviction. Words selected by the Legislature are deemed to have been chosen for a reason, *Gabin v. Skyline Cabana Club,* 54 *N.J.* 550, 555, 258 *A.*2d 6 (1969), and such language is to be given its ordinary meaning, *Town of Morristown v. Woman's Club,* 124 *N.J.* 605, 610, 592 *A.*2d 216 (1991). The majority's cramped and one-dimensional construction of "with" violates those basic tenets of statutory construction. As Judge Stern stated in *State v. Graham,* 245 *N.J.Super.* 257, 261–62, 584 *A.*2d 878 (App.Div.1991):

> The Legislature's express statement that an offense under *N.J.S.A.* 2C:35–7 shall not merge 'with' seems to clearly prohibit exactly what [the majority] suggests it permitted. *N.J.S.A.* 2C:35–7 does *not* permit merger of offenses under *N.J.S.A.* 2C:35–5 into *N.J.S.A.* 2C:35–7, or vice versa, provided that the ineligibility term survives. It plainly prohibits the merger of each 'with' the other. [The] conclusion [of the majority] would have support if the Legislature in *N.J.S.A.* 2C:35–7 permitted the merger of one offense "into" the other, or didn't bar their merger, so long as the ineligibility term survived. The Legislature certainly knew how to provide for the survival of the mandatory ineligibility term without prohibiting merger when, for example, it enacted the Graves Act, *N.J.S.A.* 2C:43–6c, which requires imposition of a mandatory ineligibility term but does not prohibit merger of Graves Act and other offenses. [(Citations omitted).]

The legislative history also supports the conclusion that the Legislature intended to create separate offenses and separate punishments under Section 5 and Section 7. For example, the two sections were introduced separately in the Legislature. Section 7 was introduced by Senator Graves and was a bill unto itself. *L.*1987, *c.* 101. Section 5 was introduced by Assemblyman Kern as part of the Comprehensive Drug Reform Act of 1986. Both bills evolved from a proposal by Governor Kean entitled *Blueprint for a Drug–Free New Jersey,* published October 1986. For a complete history of the enactment of both bills see *Gonzalez, supra,* 123 *N.J.* at 467, 588 *A.*2d 816.

In enacting Section 7 the Legislature created a *new* third-degree crime to deal with persons who distribute, dispense, or possess with intent to distribute a controlled dangerous substance within 1,000 feet of a school or a school bus. The

Legislature specifically determined that punishment for violation of Section 7 would

> not merge for sentencing purposes with punishment imposed for the underlying violation of *N.J.S.A.* 2C:35–5a, since this section responds to *a separate and distinct danger* apart from drug distribution generally, that is, the distribution of drugs within a designated school safety zone. [Official Commentary to the Comprehensive Drug Reform Act, *L.*1987, *c.* 106 (Official Commentary).]

The clear legislative intent is recognized by a leading commentator:

> Notwithstanding that the section refers to violations of another section (2C:35–5), it is clear that it is not meant to be a special sentencing provision like 2C:43–6c, the Graves Act, which it resembles, but is meant to define a separate offense. * * * The special provisions on merger and the special defenses would require that conclusion even without recourse to legislative history. Thus, what is created is a separate crime of the third degree with its own provisions related to sentencing, the most important being a required minimum sentence. [John M. Cannel, New Jersey Criminal Code Annotated Comment 2 to *N.J.S.A.* 2C:35–7 at 555 (1991) (Cannel).]

Similarly, on signing the school-zone bill, Governor Kean stated that "[t]his new law and its mandatory sentence provision is *separate and apart* from any other penalty which might be imposed by the Court for other drug violations." News Release, Office of the Governor (April 15, 1987) (emphasis added). In describing the new legislation former Attorney General Cary Edwards also stated that "[i]t's now a separate crime in New Jersey to sell drugs in a school building or on school property." *Gonzalez, supra,* 123 *N.J.* at 470, 588 *A.*2d 816.

## II

Because of the Legislature's clear intent to create separate offenses with separate punishments, there is no violation of the Double–Jeopardy clause of the Fifth Amendment to the federal Constitution. It is undisputed that where the Legislature "intended * * * to impose multiple punishments, imposition of such sentences does not violate the constitution." *Missouri v. Hunter,* 459 *U.S.* 359, 103 *S.Ct.* 673, 74 *L.Ed.*2d 535 (1983). Similarly, because of the Legislature's clear intent, we need not

examine the second prong of federal double-jeopardy analysis established in *Blockburger v. United States,* 284 *U.S.* 299, 304, 52 *S.Ct.* 180, 182, 76 *L.Ed.* 306, 309 (1932). I note, however, that *Blockburger* does not call for merging the crime with more elements (Section 7) into the crime with fewer elements (Section 5), which is the result of today's holding. No federal constitutional case has ever required the merger of a crime with the greater elements into the crime with the lesser elements.

Nor has any violation of the New Jersey Constitution taken place. This Court has "eschewed technisms and inflexibility when resolving merger issues." *State v. Cole,* 120 *N.J.* 321, 327, 576 *A.*2d 864 (1990); *State v. Currie,* 41 *N.J.* 531, 539, 197 *A.*2d 678 (1964). Instead, we follow a balancing test in which we consider the following six factors:

1. whether the legislature intended to create separate offenses;
2. whether the statutes protect different interests;
3. whether merger would frustrate the Code's sentencing scheme;
4. whether the offenses would merge under the Code's merger provision (*N.J.S.A.* 2C:1–8);
5. whether the specific proofs offered to prove the offenses would be the same; and
6. the consequences of the defendant's transgression(s).

   [*State v. Davis,* 68 *N.J.* 69, 81–82, 342 *A.*2d 841 (1975).]

Each case, of course, turns on its specific facts. For example, on several occasions we have rejected claims that *Davis* requires merger of two or more offenses. *See, e.g., Cole, supra,* 120 *N.J.* 321, 576 *A.*2d 864 (robbery, aggravated assault, and kidnapping do not merge with aggravated sexual assault); *State v. Miller,* 108 *N.J.* 112, 527 *A.*2d 1362 (1987) (child endangerment does not merge with aggravated sexual assault); *State v. Truglia,* 97 *N.J.* 513, 480 *A.*2d 912 (1984) (aggravated assault does not merge with possession of handgun for purpose of using it unlawfully); *Davis, supra,* 68 *N.J.* 69, 342 *A.*2d 841 (possession of illegal drugs does not merge with distribution of illegal drugs). In other cases, however, we have held that *Davis* required merger of two convictions. *See, e.g., State v. Mirault,* 92 *N.J.* 492, 457 *A.*2d 455 (1983) (aggravated assault

on police officer merges with first degree robbery); *State v. Best,* 70 *N.J.* 56, 356 *A.*2d 385 (1976) (possession of dangerous knife merges with robbery while armed with dangerous knife).

Applying the *Davis* factors to the present case discloses that the no-merger language of the statute should prevail. The legislature clearly intended to create separate offenses and separate punishments. The legislative history demonstrates that the school-zone statute was designed to protect different interests from those protected by Section 5. The Commentary accompanying the school-zone provision states that the statute "responds to a separate and distinct danger apart from drug distribution generally, that is, the distribution of drugs within a designated safety zone." *See Cannel, supra,* at 554.

Although it preserves the mandatory term, the Court's opinion clearly frustrates the Legislature's attempt to create separate convictions, separate penalties, separate fines, and separate fees under the two sections. The Legislature specifically provided

> for greatly enhanced economic sanctions designed to take the profit out of drug trafficking. The bill not only establishes greater ordinary fines for most drug offenses, but further permits the court to impose cash fines based on three, and in some cases, five, times the street value of the controlled dangerous substance involved.
>
> In addition, the bill provides for a mandatory Drug Enforcement and Demand Reduction Penalty to be assessed against each person convicted, adjudicated delinquent or placed in supervisory treatment for a drug or drug paraphernalia violation. This mandatory penalty is based on the degree of the offense and ranges from $500.00 for a disorderly persons offense to $3,000.00 for a first degree crime.
>
> In addition to the fines, any person convicted of or adjudicated delinquent for a drug offense will be assessed a criminal laboratory analysis fee. This fee will be used to fund forensic laboratories and to reimburse the State or county for the cost of testing suspected drugs. All moneys collected from a defendant are to be applied first to the Violent Crimes Compensation Board penalty, then to any forensic laboratory fee and then to the Drug Enforcement and Demand Reduction Fund. [Statement of the Assembly Judiciary Committee, December 18, 1986, at 4.]

The Court ignores entirely the monetary penalties, fines, and fees. Although there may be many instances in which those are not realistically collectible, that is a matter of legislative

judgment. There were 3,496 persons sentenced for school-zone violations during 1990. Even assuming that half of those would have been able to pay only the $1000 DEDR penalty, there would be approximately $1,750,000 available either for drug-rehabilitation therapy or for law-enforcement purposes. I cannot believe that the Legislature would have intended to forego those separate penalties, together with the other fines and fees for the separate injuries to the public, namely, the sale of drugs on school property.

Nor does *N.J.S.A.* 2C:1–8 compel a merger of Section 7 into Section 5. Here, the proof required to establish the greater Section 5 offense will *not* establish every element of the lesser Section 7 offense. Specifically, it will not establish that the drug sale took place within 1,000 feet of a school. Therefore, Section 7, as the lesser offense, cannot be merged into the greater Section 5 offense, because all the statutory elements of a Section 7 offense are not also elements of a Section 5 offense.

A lesser offense is necessarily included in a charge of the greater offense if the proof necessary to establish the greater offense will of necessity establish every element of the lesser offense. Under this approach, a lesser included offense is included in a greater if all the statutory elements of the lesser are also elements of the greater. [*Cole, supra,* 120 *N.J.* at 328, 576 *A.*2d 864 (citations omitted).]

In *State v. Miller,* 108 *N.J.* 112, 118, 527 *A.*2d 1362 (1987), we emphasized that "merger may be improper even where a single course of conduct constitutes a violation of two different criminal statutes. The factor critical to the merger decision in this case stems *from the different interests protected* by the statute violated." (emphasis added).

The offenses here are clearly different: one is aimed at drug distribution and the other at prohibiting the sale of drugs on or near school property. Moreover, the consequences of the criminal statutes transgressed clearly are not the same. Merger would not adequately redress the injury suffered by society because of the sale of drugs in the school environment.

The Court overlooks the fact that the no-merger provision also preserves the underlying conviction. The number of convictions does make a difference with respect to later convictions. The Court's interpretation implies that the Legislature accepted preservation of the underlying convictions merely as a necessary incident to preservation of the mandatory sentence. The Graves Act belies that interpretation. The Graves Act imposes a mandatory sentence on defendants who commit certain offenses with a firearm. *See N.J.S.A.* 2C:43-6c. Thus, that statute makes clear that the Legislature knew how to impose mandatory sentences without requiring two criminal convictions. If the Legislature chose to impose a mandatory sentence on those who commit a Section 5 offense within a school zone, it would have written the school-zone statute as a sentencing provision in a manner similar to the Graves Act. This is especially true in light of the fact that Senator Graves was also the primary sponsor of Section 7. The Legislature, however, because of its deep concern that drugs not be distributed within 1,000 feet of a school zone, instead chose to use a no-merger provision, thus preserving two separate convictions, two separate DEDR penalties, two separate fines, and two separate CLA fees, as well as the mandatory sentence.

The Court's result is also illogical. The Court concludes that there is a merger of all Section 5 convictions, including those of the first-and second-degree, into school-zone convictions, while preserving the mandatory sentencing imposed under the purportedly "merged" Section 7. Absent any indication in the statutes or their history that the Legislature envisioned such a unique sentencing scheme, that it intended such an illogical result is difficult to believe. If the Legislature had intended such a result, it would have said so explicitly, as it did in the Graves Act.

### III

The key factor in whether separate convictions merge has always been the intent of the Legislature to protect different

interests. As the majority recognizes, "[o]n its face, that provision prohibits merger of a school-zone conviction *with* any other violation of Section 5." *Ante* at 49, 601 *A*.2d at 1152. The Court may not think that two convictions with the additional penalties, fines, and fees, are important so long as there is an enhanced sentence, but the Legislature certainly did. Although the Court may not like the way the Legislature achieved its purpose, there can be no doubt about what the Legislature intended.

No federal or state constitutional principles prohibit the application of Section 7, the Legislature's no-merger provision. I would reverse the judgment of the Appellate Division.

Justice O'HERN joins in this opinion.

, *For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK and STEIN—5.

*For reversal*—Justices O'HERN and GARIBALDI—2.