623 A.2d 301

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. MARSHALL BRIAN GOSA, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 15, 1993—Decided April 15, 1993.

528

Before Judges PETRELLA, LONG and KEEFE.

*Zulima V. Farber,* Public Defender, attorney for appellant (*William Welaj,* Designated Counsel, of counsel and on the brief).

*Carmen Messano,* Hudson County Prosecutor, attorney for respondent (*Robert E. Zucconi,* Assistant Prosecutor, on the letter brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

A jury convicted defendant Marshall Brian Gosa of possession of a controlled dangerous substance (CDS), *i.e.* cocaine; possession of more than one-half ounce of CDS (cocaine), but less than five ounces thereof with intent to distribute; possession thereof with intent to distribute within 1,000 feet of school property; and knowingly receiving stolen property of the value of more than $500. The jury acquitted Gosa of possession of a handgun. For sentencing purposes the judge merged the simple possession conviction into the conviction of possession with intent to distribute and sentenced Gosa to seven years in prison. He also imposed a concurrent sentence on the conviction for distribution of a CDS within 1,000 feet of school property of four years in prison, three years without parole eligibility. In addition, the judge imposed a consecutive four year prison sentence for the theft.

On appeal, Gosa raises the following arguments:

I. The trial court erred in denying defense counsel's motion for a judgment of acquittal as to count II charging second degree possession with the intent to distribute a controlled dangerous substance since the State failed to present a prima facie case establishing a requisite element of the charge, denying to the defendant due process.

II. The trial court erred in denying defense counsel's motion for a judgment of acquittal as to count V since the State failed to present a prima facie case regarding certain necessary elements of receiving stolen property.

III. The trial court failed to adequately instruct the jury regarding the issue of value with respect to receiving stolen property. (Not raised below.)

IV. The trial court erred by failing to charge the jury regarding the affirmative defenses to *N.J.S.A.* 2C:35–7. (Not raised below.)

V. The trial court erred in denying defense counsel's motion for a mistrial as a result of the highly inflammatory and prejudicial testimony constituting other crime evidence.

VI. The trial court erred in failing to merge count III charging possession with intent to distribute a controlled dangerous substance within 1,000 feet of

school property into count II charging possession with the intent to distribute the same controlled dangerous substance. (Not raised below.)

VII.  The sentence imposed was manifestly excessive.

The offense leading to the charges against Gosa occurred at about 10:45 a.m. on August 19, 1989, when two Jersey City police officers were driving in an unmarked car and observed a group of black males standing in front of 12 Park Street.  One of the males, later identified as codefendant Erroll Johnson [1] was seen standing in the middle of the group holding a clip of vials, which an officer recognized as a common method for packaging cocaine.

The officers stopped their car.  As they exited and approached the crowd Johnson saw them and ran into the building known as 12 Park Street.  An officer identified himself as a police officer and pursued Johnson, yelling for him to stop. Johnson ran up the stairs into a room followed by the officer who testified he saw Gosa holding a handgun pointed out the window in a downward position, as well as another male who was Gosa's cousin.  Gosa dropped the gun when the officer yelled at him to do so.  Johnson tried to exit through another door and made a motion with his hands.  At that time the officer heard a noise like something falling behind a dresser in the room.

The officer arrested Gosa and read him his *Miranda* [2] rights. He also searched Gosa and recovered a clip of vials containing a white rocky powder which subsequently proved to be cocaine. The weapon Gosa had been holding contained a clip of six bullets, one in the chamber.

After securing the scene outside the building, the other officer went to the room where Gosa had been apprehended and

---

[1] Codefendant Johnson was charged in the indictment with possession of CDS, possession of CDS with intent to distribute, and possession of a CDS with intent to distribute within 1,000 feet of school property.

[2] *Miranda v. Arizona*, 384 *U.S.* 436, 478–479, 86 *S.Ct.* 1602, 1630, 16 *L.Ed.*2d 694, 726 (1966).

was told that Johnson had discarded something behind the dresser. When the item was recovered it turned out to be a clip of five vials of cocaine.

After Gosa was secured by handcuffs, the police went to the third floor where they found numerous people, including Johnson and some young children, in a bedroom and living room. Johnson was arrested.

An officer testified that as the police were preparing to leave with the arrested individuals, Gosa requested a jacket that was hanging on the door handle in his room. This was retrieved and searched before it was given to Gosa. A small key was found in a pocket and it was left in the room. Gosa was then led into the kitchen where his mother, Marthe Gosa, was seated. She signed a consent to search form and Gosa signed a consent to search form for his room. During the search a toolbox was observed in Gosa's room. It was opened by the key that came from Gosa's jacket. The toolbox contained a bag with 180 vials of white powder, between $900 and $1,062 in cash, and some tools. There was also some clear, empty vials, caps to vials, vials with trace amounts of white powder, razor blades, rubber bands, and various other small items. The officers also found a cookie tin which contained a plastic bag filled with white vial caps, numerous vials and .25 caliber rounds of ammunition. The officers also found two portable two-way radios with Port Authority insignias on them beneath a stereo set. When Gosa was later questioned about the radios by a detective from the Port Authority, Gosa said that he had purchased them from someone named Mike for $50.

Tests conducted by the State concluded that the 180 vials found in the toolbox contained 43.58 grams of cocaine and the eight vials found on Gosa contained 1.53 grams of cocaine. At trial the State's expert opined that the five vials discarded by Johnson and the eight vials found on Gosa were from the original "stash" found in the toolbox. He also testified that the facts as presented to him indicated a middle-level drug opera-

tion due to the amount of cash seized, the amount of drugs, the method of packaging, and the existence of the two radios, which would be used to monitor police calls.

Gosa testified in his own defense and admitted to owning the .25 caliber handgun. He said he purchased it in Texas while on active duty in the United States Army in 1986. He said he bought the gun for his family's protection. He had heard a commotion on the date involved, jumped up, pulled out his weapon and asked what was going on. He testified to seeing his cousin, Kenneth Gosa and Johnson enter the room followed by a person he did not know. Johnson and that person, who was the police officer following Johnson, went through another door leading to the third floor. Gosa said that he put his weapon on the floor when the officer entered the room before the officer said anything to him. After he was arrested, handcuffed and placed on the bed, he was taken downstairs to the kitchen and asked to sign a consent to search form which he said he did under threat that if he did not he and all of his relatives would be immediately arrested. He testified he never requested the jacket hanging on the front bedroom doorknob and that he was given and wore another jacket.

According to Gosa the officer discovered three vials of cocaine in Gosa's pants pocket when he arrested Gosa. Gosa said he was addicted to cocaine and used between ten to fifteen vials a day. He testified he obtained the cocaine from his nephew Rodney. Gosa denied that the toolbox, the cookie tin and its contents, the vials discarded by Johnson or the radios ever belonged to him. He also denied making any statement to a Port Authority detective. From the verdict it is clear that the jury essentially believed the testimony presented by the State.

Gosa first argues that his conviction for second degree possession with intent to distribute should be set aside because the State failed to prove an element of the offense.

At trial, the State presented evidence regarding the vials found in the toolbox, by way of its expert witness, a chemist

from the New Jersey State Police Regional Laboratory in Sea Girt. The chemist testified that she tested only fifteen of the 180 vials and that lab procedure was to test two or ten percent of samples in a specimen, to a maximum of fifteen. She said: "We select them [the samples] randomly and presume that the remainder is the same as the random samples we selected."

The chemist used the following method to determine that the total weight of cocaine in the 180 vials was 43.58 grams.

Well, I first weighed the items and then I analyzed them.

Q  Could you tell the ladies and gentlemen of the jury how they were analyzed and how they were weighed?

A  Okay. For the weight I took a gross weight of all the vials, including the rubber band and the tape, and I obtained a gross weight of 180 vials.

Then I took an average weight of four empty vials, and I multiplied that by 180 to get the weight of the 180.

So I subtracted that from the gross weight, and I obtained an average weight for the labels and tapes and rubber band.

I subtracted that out to get a net weight for the powder.

Q  As a result of those calculations, did you come to a weight as to Item 1?

A  Yes. The net weight of the powder was 43.58 grams.

The chemist was then asked to convert the grams to ounces and she testified the cocaine in the 180 vials weighed "a little over one and a half ounces...."

At the close of the State's case defense counsel moved for a judgment of acquittal on the count in the indictment charging Gosa with possession of cocaine in a quantity of more than one-half ounce, but less than five ounces, contrary to *N.J.S.A.* 2C:35-5a(1) and *N.J.S.A.* 2C:35-5b(2). She argued, as Gosa now basically does on appeal, that as less than ten percent of the vials were tested, a reasonable jury could not conclude on the evidence that the remaining vials contained a controlled dangerous substance. To allow the jury to consider what the other vials contained, would be to allow it to speculate. The trial judge denied the motion saying:

From the testimony that has been presented, the jury can draw an inference that out of the 180, 15 were selected at random and proved positive for cocaine, and that according to the testimony of the chemist, they all looked to her to be a white powdery substance consistent with cocaine. And if they all looked

somewhat similar, an inference can be drawn from that testimony that the remainder in fact are cocaine.

Between the direct and circumstantial evidence, there is sufficient evidence for the jury to conclude that all 180 were cocaine.

So I will deny your motion with respect to Counts One, Two and Three.

Gosa argues that the judge erred in not ordering a judgment of acquittal and that his conviction should be vacated since the State only presented evidence to warrant a conviction of third degree possession with intent to distribute.

*N.J.S.A.* 2C:35–5a(1) makes it a crime for a person "knowingly or purposely ... to possess ... with intent to ... distribute ... a controlled dangerous substance...." *N.J.S.A.* 2C:35–5b delineates, among other things, what degree offenses are committed when violating subsection a with regard to particular substances and their amounts. *N.J.S.A.* 2C:35–5b(2) makes violation of subsection a with respect to cocaine in a quantity of one-half ounce or more but less than five ounces a crime of the second degree. Under *N.J.S.A.* 2C:35–5b(3) violation of subsection a with respect to less than one-half ounce is a third degree crime.

Under *R.* 3:18–1 a defendant is entitled to a judgment of acquittal on a charge "if the evidence is insufficient to warrant a conviction." An appellate court applies the same standard in deciding whether the trial judge erred. *State v. Moffa,* 42 *N.J.* 258, 263, 200 *A.*2d 108 (1964). In deciding whether the evidence is insufficient, the court views the State's evidence in its entirety, "be that evidence direct or circumstantial" and gives the benefit of all reasonable inferences to the State in determining whether "a reasonable jury could find guilt beyond a reasonable doubt." *State v. Reyes,* 50 *N.J.* 454, 458–459, 236 *A.*2d 385 (1967).

There was no testimony as to the exact weight of the cocaine in the sampled fifteen vials which were actually tested, but presumably if the 180 vials weighed just over one and one-half

ounces, the fifteen vials weighed considerably less.[3] We note that a similar random testing procedure was used in *State v. Roberson*, 246 *N.J.Super.* 597, 588 *A.*2d 434 (App.Div.), *appeal dismissed*, 126 *N.J.* 330, 598 *A.*2d 889 (1991). The conviction there was not reversed on that ground, but on the failure to have the jury determine the quantity of cocaine possessed by defendant. The court also held another statute, which established procedures for admissibility of a certificate from the state laboratory, certifying the types and amounts of drugs submitted to it did not invade the Supreme Court's exclusive power to establish rules of evidence and the procedures did not violate the right to confrontation.

Our statute makes it clear in *N.J.S.A.* 2C:35–5b that in determining the amount by weight for the various offenses, the listed drug includes "any adulterants or dilutants." [4] Other jurisdictions have held that for purposes of sentencing, the weight of the CDS takes into account the weight of the mixture of the cocaine and any cutting agents, not just the weight of the pure cocaine. *See United States v. Touby*, 909 *F.*2d 759, 772 (3d Cir.1990), *aff'd*, 500 *U.S.* ——, 111 *S.Ct.* 1752, 114 *L.Ed.*2d 219 (1991); *Commonwealth v. Vallejo*, 616 *A.*2d 974, 976–977 (Pa.1992).

---

[3] Assuming the fifteen vials accurately represented the weight of the 180, which is what the State contends since it based its calculation of the weight of the 180 on the fifteen vials, the fifteen representing one-twelfth or 8.33% of the whole, would weigh 3.63 grams or 12.8% of an ounce, well below the amount necessary to make out the second degree offense.

[4] This contrasts with the prior version of this same statute, which provided that in order to make out an offense for either a first or second degree crime, the State had to prove that at least 3.5 grams of the total weight of the substance was "pure freebase drug." A crime of the third degree was when the entire substance weighed less than one-half ounce or more than one-half ounce with less than 3.5 grams of the pure freebase drug or where the amount of the pure drug was undetermined. *L.* 1988, *c.* 44, § 2, effective June 28, 1988, amended *N.J.S.A.* 2C:35–5b to remove any requirement of proof of the amount of the pure drug as an element of the offense. *See State v. Torres*, 236 *N.J.Super.* 6, 10, 563 *A.*2d 1141 (App.Div.1989).

■ Since defendant had 180 vials of a white powdery substance in a locked toolbox in his bedroom, fifteen of which were randomly selected, tested and found to contain cocaine, the clear inference is that the other 165 vials, if tested, would also be found to contain cocaine. *Cf. State v. Maure,* 240 *N.J.Super.* 269, 573 *A.*2d 186 (App.Div.1990), *aff'd o.b.,* 123 *N.J.* 457, 588 *A.*2d 383 (1991) (random testing of ampoules for breathalyzer testing approved). This is sufficient circumstantial evidence to undergird the conviction for the higher degree offense. We thus conclude, based on logic and common experience, that the circumstantial evidence that these other 165 vials also contained cocaine, supports the trial judge's determination that a reasonable jury could find guilt as to the offense beyond a reasonable doubt.

■ We have considered Gosa's remaining arguments in light of the record and the arguments presented and conclude that they are without merit. *R.* 2:11–3(e)(2). We add only the following comments. The trial judge appropriately denied Gosa's motion for a judgment of acquittal as to the theft charge since there was sufficient evidence presented from which the jury could find beyond a reasonable doubt that Gosa had received stolen property. *See State v. Reyes, supra,* 50 *N.J.* at 458–459, 236 *A.*2d 385. There was also sufficient evidence to establish that the value of the two Port Authority radios exceeded $500. The testimony was to the effect that the radios, despite their age, had not depreciated substantially as long as they were in good repair.

■■ No objection was made to the jury charge, and hence we review the claim of error with respect to the challenged portions of the charge under the plain error standard. *See R.* 1:7–2 and *R.* 2:10–2. Considering the judge's instructions as a whole, we are satisfied that the jury was sufficiently instructed with respect to the necessity of determining the value of the stolen property at the time it was stolen. The judge did not instruct the jury that the relevant time of valuation was when

the property was new. Moreover, on summation, defense counsel highlighted the fact that the value of the radios (referred to as "walkie-talkies") should be calculated at the time of the offense. The jury could have reasonably concluded based on the evidence that the value of the equipment at the time of the offense exceeded $500.

■ Next we turn to the argument that the judge failed to charge the affirmative defenses in *N.J.S.A.* 2C:35-7. Aside from the fact that this issue was not raised below, it is clear from the facts presented to the jury that not only was there no plain error in failing to instruct the jury as to the affirmative defenses, but there was no error. There were children in the home and part of the offense occurred outside of the home. Moreover, defendant testified that his nephew Rodney sold him cocaine in the house. Thus, the affirmative defense was inapplicable.

As to the reference by a prosecution witness to "another revolver," a matter which the prosecutor and defense counsel mutually agreed not to raise, a fair reading of the record makes it clear that the response was inadvertent. In any event, we are satisfied that the judge's curative instruction was appropriate. We presume that the jury followed the judge's instructions. *State v. Manley*, 54 *N.J.* 259, 270, 255 *A.*2d 193 (1969).

■ The State concedes that as a result of *State v. Dillihay*, 127 *N.J.* 42, 45, 601 *A.*2d 1149 (1992), that the conviction of possession with intent to distribute a CDS within 1,000 feet of school property merges into the conviction of second degree possession with intent to distribute a CDS. Thus, a remand is required for resentencing in accordance with *Dillihay*. The effective sentence on the conviction of second degree possession with intent to distribute after the merger would thus be seven years, but it must include the three year parole ineligibility period.

Finally, subject to the resentencing as a result of the merger, there was no mistaken exercise of sentencing discretion. *State*

*v. Ghertler,* 114 *N.J.* 383, 555 *A.*2d 553 (1989); *State v. Roth,* 95 *N.J.* 334, 471 *A.*2d 370 (1984).

The convictions are affirmed. The matter is remanded for resentencing in accordance with *State v. Dillihay, supra,* 127 *N.J.* at 45, 601 *A.*2d 1149.