231 N.J. Super. 535 (1989)
555 A.2d 1169
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES HENRY HAMMOND, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 7, 1989.
Decided March 21, 1989.
*536 Before Judges MICHELS, LONG and MUIR, Jr.
Alfred A. Slocum, Public Defender, attorney for appellant (Harold S. Vogel, Designated Counsel, of counsel and on the brief).
*537 Defendant submitted a supplemental pro se brief.
Donald R. Belsole, Acting Attorney General, attorney for respondent (Michael J. Williams, Deputy Attorney General, of counsel and on the brief and letter brief in response to defendant's pro se supplemental brief).
The opinion of the court was delivered by MUIR, Jr., J.A.D.
A jury found defendant guilty of first degree aggravated sexual assault while armed with a hand gun, a violation of N.J.S.A. 2C:14-2a(4) (Count 1); two counts of fourth degree aggravated assault, violations of N.J.S.A. 2C:12-1b(4) (Counts 2 and 8); three counts of third degree terroristic threats, violations of N.J.S.A. 2C:12-3 (Counts 3, 7 and 11); fourth degree criminal coercion, a violation of N.J.S.A. 2C:13-5 (Count 5); possession of a handgun with the purpose to use it unlawfully against a person, a violation of N.J.S.A. 2C:39-4a (Count 6); second degree aggravated assault, a violation of N.J.S.A. 2C:12-1b(1) (Count 9); third degree aggravated assault, a violation of N.J.S.A. 2C:12-1b(2) (Count 10); tampering with a witness, a violation of N.J.S.A. 2C:28-5a (Count 12); and retaliating against a witness, a violation of N.J.S.A. 2C:28-5b (Count 13). Defendant committed the crimes against his paramour over a twenty-seven-day period.
The trial judge imposed the following sentence:
(1) Count 7: five years imprisonment;
(2) Count 8: eighteen months imprisonment with nine months parole ineligibility, concurrent with Count 7;
(3) Count 3: five years imprisonment consecutive to Count 7;
(4) Count 2: eighteen months imprisonment with nine months parole ineligibility, consecutive to Count 8 and concurrent with Count 3;
(5) Count 1: twenty years imprisonment with ten years parole ineligibility, consecutive to Count 7 and concurrent with Count 3;
(6) Count 6: ten years imprisonment with five years parole ineligibility, consecutive to Count 1;
(7) Count 5: five years imprisonment concurrent with Count 1;

*538 (8) Count 9: ten years imprisonment with five years parole ineligibility, consecutive to Count 1 and concurrent with Count 6;
(9) Count 10: merged into Count 9;
(10) Counts 11 and 12: five years imprisonment on each, concurrent with each other and Count 1;
(11) Count 13: 18 months imprisonment concurrent with Count 1.
The judge stated he intended an aggregate sentence of 35 years with 15 years, 9 months parole ineligibility.
Defendant appeals, through counsel, contending:

Point I. It was error for the trial judge to impose six consecutive sentences totalling 35 years. (Not raised below).

Point II. It was error for the trial judge to fail to merge the counts charging terroristic threats into the counts charging aggravated assault. (Not raised below).
Defendant, pro se, contends:

POINT 1: DEFENDANTS [sic] CONSTITUTIONAL RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WAS DENIED BY THE ACTION OF A COURT ATTENDANT REFUSING HIM ENTERENCE [sic] TO THE COURTROOM DURING THE COURTS INSTRUCTIONS TO THE JURY:
1. Constitutional claim.
2. Procedural due process.
3. Abuse of Court's Discretion.
4. Prejudicial Error on the Court's Instruction on Flight.

I.
We turn first to defendant's pro se contentions. On the afternoon preceding the day set for the judge's jury charge, the judge, in defendant's presence, directed the jury, counsel and the defendant to be present the next morning at 9 a.m. Defendant, who was out on bail, had been present at all proceedings up to that point including two discussions between the judge and counsel on the elements of the jury charge. The next morning, the proceedings began in defendant's absence. After a somewhat brief colloquy between counsel and the Court, defense counsel requested the judge to wait until 9:30 a.m. before beginning the charge. There is no indication in the record as to the time when counsel made the request. Then, apparently after some delay, although the record does not *539 indicate how long, the judge stated, "Well, I'm going to start. I compromised. It's twenty-five after. I'll explain to the jurors we're starting, we understand he's on his way." Then, after the renewal of a request by the State for a flight charge, the jurors filed in and the clerk called the roll of the jurors. Again, while the record does not indicate the precise time, it had to be 9:30 a.m. or later when the judge began his charge, based on the events which transpired between the judge's announcement of the time and completion of the roll call. At that time, the judge stated:
Good morning, ladies and gentlemen. I'm sorry we're starting late this morning. We did  I understand there was an elevator problem out there and which I'm sure some of you had to contend with. And we assume possibly that Mr. Hammond was having a similar problem. And then we understand that he did tell somebody that he was catching a bus from where he resides in a portion of Camden at quarter of eight, quarter after eight to be here and he's been here every morning on time, but he's not here, so we'll have to start whether he comes or not.
During the charge, the judge went on to state:
Now, the State has requested and we do not know what happened to Mr. Hammond. He's not here. Whether some misfortune overcame him, and I'm going to ask as soon as this proceeding is completed and you start your deliberations, and if Miss  I'm sure Miss Neilson will make appropriate inquiries if per chance that some misfortune has occurred I will immediately have that word passed to you in your deliberations. To this moment there's been no word from or about Mr. Hammond. So the State has requested that I make comment of it upon that to you the fact that he's not here. Obviously he for the moment appears to have voluntarily absented himself from these proceedings.
You may consider this for whatever inference that it may indicate to you as to whether or not his possible fear of the consequences of these proceedings may have caused him to purposely absent himself. If you wish you may take that inference. On the other hand, as I assure you, we will endeavor to find out what we can and if some word comes in it will be passed to you immediately so that you will not take any adverse inference against Mr. Hammond.
Shortly after the judge completed the jury instructions, defense counsel advised the Court that a court attendant "told me that Mr. Hammond has been here since just a couple of minutes after 9:30 but Mr. Taylor thought he wasn't allowed to let anybody in so he's been standing out there." The judge, accepting the representation, directed defendant be brought in *540 and the judge then explained to the jury the court attendant was new to the job and should have interrupted the charge. Solicitously, the judge stated to defendant, "I'm so glad you're here before the jury retired." Defendant explained he "had to catch a bus."
Defense counsel raised no objection to the charge being given in defendant's absence. In the absence of any objection, the State contends, the issue must be treated as plain error and as such does not rise to a level that justifies reversal of the convictions. See R. 2:10-2; State v. Macon, 57 N.J. 325 (1971). Regardless of the context of the error, we are satisfied the trial judge did not commit reversible error when he charged the jury in the absence of defendant.
Defendant's right to be present at all phases of trial is set forth in R. 3:16. That rule embodies defendant's constitutional right to be present at trial. See State v. Smith, 29 N.J. 561, 578 (1959). The underlying constitutional rights are grounded in the confrontation clauses of the State and Federal Constitutions, as well as the due process clause of the Federal Constitution and our common law mandates for a fair trial. The federal confrontation clause is designed to promote the truth finding functions of the criminal court by assuring defendant's opportunity to cross-examine witnesses against him. See Tennessee v. Street, 471 U.S. 409, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985) (hearsay evidence admitted against defendant with no opportunity to cross-examine); Delaware v. Van Arsdale, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (improper curtailment of cross-examination of key witness). There is nothing to suggest the state confrontation clause has any differing goals. Cf. In re Myron Farber, 78 N.J. 259, 271-74 (1978).
Moreover, due process also protects a defendant's right in some situations where defendant is not actually confronting evidence or witnesses against him. In Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), Justice *541 Cardozo stated a defendant has the right to be present "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend." Id., 291 U.S. at 106, 54 S.Ct. at 332, 78 L.Ed. at 678; see also Kentucky v. Stincer, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (where both majority and dissent accept Cardozo's analysis). He explained the Fourteenth Amendment required defendant's presence at trial as a condition of due process "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Id., 291 U.S. at 107-08, 54 S.Ct. at 333, 78 L.Ed. at 679. He then went on to hold that where there is nothing for the defendant to do and almost nothing he could gain, his due process rights were not violated when the jury visited the scene of the alleged crime in his absence. Id.
In State v. Auld, 2 N.J. 426, 434 (1949), our Supreme Court found Justice Cardozo's reasoning in Snyder persuasive. In Auld, the Court concluded defendant's absence during certain phases of his trial demonstrated no prejudice to his defense on the merits, essentially because there was nothing he could do or nothing he could gain by his presence. Id. at 433-34; see also State v. Trent, 157 N.J. Super. 231, 241-42 (App.Div. 1978), rev'd on other grounds, 79 N.J. 251 (1979).
Here, we discern neither an unconstitutional denial of due process nor a denial of fundamental fairness when the trial judge charged the jury in the absence of defendant. Defendant participated in all the evidence-producing aspects of the trial. He had full opportunity to avail himself of all his rights under the confrontation clauses. He participated in every phase of the trial where his presence involved or required any personal participation. Indeed, he could have participated in the jury charge discussion with the trial judge had he so chosen and been sufficiently qualified to do so. (The record reflects he did not participate in those discussions.) Thus, essentially all that remained on the day of his absence was for the judge to charge the jury. Defendant had nothing to do and almost nothing to gain from his presence on the day of the charge aside from *542 avoiding the adverse inference that might be drawn from his absence which we will discuss later. Consequently, the circumstances do not demonstrate grounds for reversing his conviction.
Moreover, even if we were inclined to consider his absence a verdict vitiating factor, we are disinclined to find reversible error in light of the fact that defendant precipitated his own absence. R. 3:16 makes the defendant's voluntary absence an exception to the requirement that he be present at all stages of trial. Once a trial has commenced in defendant's presence, his voluntary absence thereafter does no violence to constitutional standards or dictates of fundamental fairness. State v. Lynch, 177 N.J. Super. 107, 113 (App.Div.), certif. den. 87 N.J. 347 (1981); see State v. Childs, 204 N.J. Super. 639, 649-50 (App.Div. 1985). Were it otherwise, defendant could secure a reversal for a self-created error which could totally and inappropriately frustrate the operation of the criminal justice system. See State v. Scioscia, 200 N.J. Super. 28, 47 (App.Div.), certif. den. 101 N.J. 277 (1985).
Defendant failed to arrive on time the morning of the jury charge. He knew the night before he had to be present at 9 a.m. He knew from prior trial days how long it took to get to the courthouse. All others involved, counsel and the jurors, were present despite apparent problems with a courthouse elevator. Defendant did not attribute his lateness to that latter fact. Moreover, he did not suggest his bus was late. Consequently, defendant's voluntary conduct contributed to his absence to such a degree that his exclusion from the courtroom did not violate his constitutional or other protected rights.
That is not to suggest that under ordinary circumstances defendant may be excluded during the charge to the jury. Normally, a defendant should always be present during the charge.
*543 The trial judge here made reasonable efforts to ensure defendant's presence. He also carefully instructed the jury so defendant would receive a fair trial despite his absence. The judge waited until 9:25 a.m. before he called for the jury. The events which transpired thereafter strongly suggest he did not begin charging the jury until at least 9:30 a.m., the time requested by defense counsel, or even later. Indeed, the judge began the charge by excusing defendant's absence. Even after he charged the jury on the adverse inference it could draw from defendant's absence, the judge made it expressly clear defendant's appearance precluded the jury from drawing the inference. When defendant did appear, the judge, in effect, blamed defendant's absence on an inexperienced court attendant.
Our review of the total circumstances supports the conclusion that no error occurred as a result of defendant being absent during the jury charge. That conclusion is reinforced by the tenet that there can be no assumption the jury did not faithfully follow the judge's instruction on drawing any adverse inferences. See State v. Manley, 54 N.J. 259, 270 (1969). Moreover, even if we assume there was some error, the error was harmless beyond a reasonable doubt and not "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2; see State v. Macon, 57 N.J. 325, 335-36 (1971); State v. Coruzzi, 189 N.J. Super. 273, 274 (App.Div.), certif. den. 94 N.J. 531 (1983).

II.
Relying on State v. Yarbough, 100 N.J. 627 (1985), defendant argues the trial judge committed reversible error when he imposed six consecutive sentences. We disagree with the contention the trial judge imposed six consecutive sentences.[1] With the concurrent sentences imposed, the judge *544 imposed three consecutive sentences. Those three cumulative sentences, given the extraordinary circumstances of the crimes, did not violate the holding of Yarbough.
Yarbough serves as a recommended guideline for imposing consecutive sentences when sentence is pronounced on one occasion on an offender who has engaged in a pattern of behavior constituting a series of separate offenses or committed multiple offenses in separate, unrelated episodes. Id. at 644-45. It does not, as defendant suggests, proscribe the imposition of more than two consecutive sentences in all instances. As Justice O'Hern stated, for a unanimous court, "We recognize that even within the general parameters that we have announced there are cases so extreme and so extraordinary that deviation from the guidelines may be called for." Id. at 647.
The crimes defendant committed qualified for the deviation. As the trial judge stated in his reasons for sentencing, defendant committed crimes on three separate occasions. He committed twelve acts of violence or threats of violence against the same woman during those three occasions. He committed them under circumstances where the victim could not flee due to exposing her tender-aged children to potentially similar violence from defendant. Defendant threatened violence to the children. The violence was "excessive and extreme." Thus, we conclude there was competent credible evidence in the record to support the extraordinary sentences imposed. We discern no reason for disturbing them. See State v. Roth, 95 N.J. 334, 364-65 (1984).

*545 III.
Defendant also contends the three third degree terroristic threat convictions should have merged into the two fourth degree aggravated assault and one second degree aggravated assault. We find the contention essentially without merit. R. 2:11-3(e)(2).
No crime of greater degree or culpability can merge into one of lesser degree or culpability. Cf. State v. Connell, 208 N.J. Super. 688, 695-96 (App.Div. 1986). Moreover, by applying the "flexible approach of focusing on the episodic fragments or events," we find no basis for merger. See State v. Miller, 108 N.J. 112, 116-17 (1987); State v. Davis, 68 N.J. 69, 81 (1975). Finally, assuming mergers were required, those proposed would not affect the aggregate sentence due to the concurrent sentences imposed and the fact that the fourth degree convictions merged into the second degree convictions except as to the mandatory Graves Act parole ineligibility.

IV.
Sua sponte, we raise on plain error grounds the Graves Act parole ineligibility terms imposed on the fourth degree offenses. The trial judge imposed improper parole ineligibility terms. We consequently modify the sentences.
N.J.S.A. 2C:43-6e requires 18 months parole ineligibility on fourth degree aggravated assault offenses involving possession of a firearm. The trial judge imposed nine month parole ineligibility terms on both fourth degree aggravated assault convictions. Since the sentences are illegal, we vacate them and remand for resentencing.
The convictions are affirmed. The sentences are affirmed except for those on Counts 2 and 8, which are vacated and remanded for resentencing. Upon resentencing, the judgment of conviction and order of commitment are to be corrected.
NOTES
[1] The complexity of the sentences imposed engendered the misconception. The consecutive sentences can be grouped as follows:

(1). Counts 7 and 8: 5 years with 9 months parole ineligibility.
(2). Counts 1, 2, 3, 11, 12 and 13: 20 years with 10 years parole ineligibility.
(3). Counts 6, 9 and 10: 10 years with 5 years parole ineligibility.
With the three groups consecutive to one another, the aggregate sentence, as intended by the trial judge, is 35 years with 15 years and 9 months parole ineligibility, or 5 years and 9 months more than the overall outer limit on cumulation suggested in Yarbough.