**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2241-18T2
              A-2270-18T2
              A-2311-18T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

AZIKWA RUSTIN,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ALQUAN HARRIS,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JOSEPH N. WRIGHT, a/k/a
NORMAN BLACK, and
CURTIS GORDON,

        Defendant-Appellant.

_____

Submitted February 13, 2020 – Decided March 11, 2020

Before Judges Nugent and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment Nos. 18-01-0031, 18-01-0032 and 18-01-0033.

Joseph E. Krakora, Public Defender, attorney for appellant Azikwa Rustin (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Joseph E. Krakora, Public Defender, attorney for appellant Alquan Harris (Michele A. Adubato, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, attorney for appellant Joseph N. Wright (Frank M. Gennaro, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Steven A. Yomtov, Deputy Attorney General, of counsel and on the briefs).

PER CURIAM

Defendants Azikwa Rustin, Alquan Harris, and Joseph N. Wright appeal

from the September 28, 2018 order of the Law Division denying their motion to

suppress evidence for want of standing. After denial of their motion, defendants entered guilty pleas to several charges arising from their participation in the shooting of a motorist. We affirm the September 28, 2018 order.

Wright also appeals from his December 20, 2018 judgment of conviction and sentence. He argues he was convicted of multiplicitous charges, the trial court improperly merged several counts, and he received an illegal and excessive sentence. We remand the Wright appeal for resentencing. Because some of our holdings with respect to Wright's sentencing are equally applicable to Rustin and Harris, we remand those matters for resentencing, even though those defendants did not appeal their sentences.

I.

We derive the following facts from the record. On October 26, 2017, police officers responded to reports of gunshots in downtown Somerville. At the scene, the officers found shell casings, tire marks, and damage to a wooden staircase attached to a building.

The officers noticed surveillance cameras around the exterior of a private residence in the area of the shooting. The homeowner, Gregory Jewitt, told officers he owned the surveillance system. He initially was uncooperative and said the cameras had not been recording at the time of the incident. According

to the State, Jewitt eventually agreed to allow officers to copy the video recordings without a warrant.

The video recordings depict the shooting. Defendants arrive in the area in a vehicle driven by Ishmael Proctor, a codefendant not involved in this appeal. They exit the vehicle. Rustin is armed with a semiautomatic handgun. He walks with Wright to a second parked car.

Rustin conceals his handgun in his sweatshirt and walks up the street toward a third vehicle. He draws his handgun and begins firing at the vehicle, causing the driver to lose control and crash into the side of a building. Rustin runs toward the crashed vehicle and continues firing, striking the driver. Wright pulls a handgun out of the parked vehicle. He runs toward Rustin while shooting at the car under Rustin's fire. One of the rounds fired by Wright hits and injures Rustin. Wright returns to the parked vehicle and puts an object, presumably his gun, inside. Rustin gives his handgun to Harris.

A grand jury indicted defendants in a single indictment, charging them with: first-degree conspiracy to commit murder, N.J.S.A. 2C:11-3(a)(1) and N.J.S.A. 2C:5-2(a)(1) to (2); second-degree conspiracy to possess a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) and N.J.S.A. 2C:5-2(a)(1) to (2); second-degree conspiracy to possess a handgun, N.J.S.A. 2C:39-5(b)(1) and

4

N.J.S.A. 2C:5-2(a)(1) to (2); first-degree attempted murder, N.J.S.A. 2C:11-3(a)(1) and N.J.S.A. 2C:5-1(a)(2) to (3); second-degree possession of a 9mm Keltec handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); second-degree unlawful possession of a 9mm Keltec handgun, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); and second-degree unlawful possession of a handgun,  N.J.S.A. 2C:39-5(b)(1).

Rustin was separately indicted on second-degree certain persons not to have weapons, a 9mm Keltec handgun, N.J.S.A. 2C:39-7(b)(1), due to prior convictions, and second-degree certain persons not to have weapons, a handgun, N.J.S.A. 2C:39-7(b)(1), due to prior convictions.

Wright was also separately indicted on first-degree unlawful possession of a 9mm Keltec handgun due to a previous robbery conviction, N.J.S.A. 2C:39-5(b)(1) and N.J.S.A. 2C:39-5(j); first-degree unlawful possession of a handgun due to a previous robbery conviction, N.J.S.A. 2C:39-5(b)(1) and N.J.S.A. 2C:39-5(j); second-degree certain persons not to have weapons, a 9mm Keltec handgun, due to prior convictions, N.J.S.A. 2C:39-7(b)(1); and second-degree certain persons not to have weapons, a handgun, due to prior convictions, N.J.S.A. 2C:39-7(b)(1).

Defendants moved to suppress the video recordings. They argued Jewitt did not give valid consent to the warrantless search that resulted in police obtaining the evidence.

On September 28, 2018, the trial court entered an order denying defendants' motion. In a written decision, the court found an evidentiary hearing was not necessary because the material facts needed to decide whether defendants had standing to challenge the seizure of the video recordings were not in dispute. The court rejected defendants' argument they had a possessory interest sufficient to confer standing. As the court explained, "[t]he video was seized from the home of Mr. Jewitt, a third party. The video was taken by surveillance equipment owned by Mr. Jewitt. Therefore, none of the [d]efendants have a possessory or proprietary interest in the video, the property seized, [or] the place searched."

In addition, the court concluded defendants did not have a participatory interest in the seized evidence because they did not have some culpable role, as principal, conspirator, or accomplice in criminal activity that generated the evidence. The court held that while defendants' criminal acts were captured on the recordings, that alone was insufficient to confer standing absent a connection with the place searched and the items seized.

A-2241-18T2

Finally, the trial court rejected defendants' argument they had automatic standing to challenge the seizure of the video recordings because they had been charged with possessory crimes. The court noted defendants were charged with possession of weapons. However, "the evidence seized was not a gun, but a video. As the [d]efendants were not charged with . . . possession of the seized video, they cannot gain automatic standing."[1] Having determined defendants lacked standing to challenge seizure of the video recordings, the court did not decide whether Jewitt's consent was valid.

Following denial of the motion to suppress, defendants entered guilty pleas to all of the counts of the joint indictment, except the two first-degree charges were amended to second-degree conspiracy to commit aggravated assault, N.J.S.A. 2C:12-1(b)(1) and N.J.S.A. 2C:5-2(a)(1); and second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1). Rustin and Wright also entered guilty pleas to the counts in the individual indictments issued against them.

---

[1] Defendants did not argue before the trial court the seizure of the video recordings violated the Fourth Amendment. The trial court, therefore, did not determine whether defendants had standing under the federal constitution. See State v. Alston, 88 N.J. 211, 229 (1981) ("We . . . caution . . . trial courts that when ruling on suppression motions in which standing may be in issue under federal and state claims, the court should make explicit findings and legal conclusions as to standing under both the Federal and State Constitutions.")

The trial court sentenced Rustin consistent with his plea agreement to an eight-year prison term, with an eighty-five-percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, for second-degree aggravated assault. On each of the remaining counts of the joint indictment, the court sentenced Rustin to a five-year term of incarceration to run concurrently with each other and with the sentence on second-degree aggravated assault.[2] The court also sentenced Rustin to two concurrent five-year terms of imprisonment on the certain persons convictions in the individual indictment to run concurrent to his sentence on the convictions in the joint indictment.

The trial court sentenced Harris consistent with his plea agreement to a five-year term of imprisonment, with an eighty-five-percent period of parole ineligibility pursuant to NERA for second-degree aggravated assault. The court merged the convictions on the remaining counts of the joint indictment with the second-degree aggravated assault conviction.[3]

_____

[2] Although the trial court's oral opinion does not refer to merger, the December 18, 2018 judgment of conviction merges all counts of the joint indictment with the conviction of second-degree aggravated assault. The judgment of conviction does not include sentences on any count merged with the conviction of second-degree aggravated assault.

[3] In its oral opinion, the trial court imposed individual sentences on each of the convictions it subsequently merged with Harris's conviction of second-degree

The trial court sentenced Wright consistent with his plea agreement to an eight-year term of imprisonment, with an eighty-five-percent period of parole ineligibility pursuant to NERA for second-degree aggravated assault. On each of the remaining counts of the joint indictment, the court sentenced Wright to a five-year prison term, with all sentences to run concurrent to each other and to the sentence imposed for second-degree aggravated assault. The court also merged those counts with the conviction for second-degree aggravated assault.[4]

Under the separate indictment, on Count One the court sentenced Wright to a twelve-year term of incarceration with a five-year period of parole ineligibility for first-degree unlawful possession of the 9mm Keltec. The court imposed the same sentence for first-degree unlawful possession of the handgun to run concurrently with the sentence on Count One. For each of the second-degree certain persons convictions, the court imposed a five-year term of incarceration to run concurrent to the sentence on Count One. The sentences on

aggravated assault. The judgment of conviction, however, includes a sentence only on the conviction for second-degree aggravated assault.

[4] Wright's December 20, 2018 judgment of conviction imposes an eight-year term of incarceration on the conviction of second-degree aggravated assault, and merges the remaining counts of the joint indictment with that conviction without imposing a separate sentence on the remaining convictions.

each of the counts in the individual indictment run concurrently with the sentence imposed on the counts of the joint indictment.

These appeals followed. Rustin makes the following argument for our consideration:

> THE MATTER SHOULD BE REMANDED FOR AN EVIDENTIARY HEARING ON THE LAWFULNESS OF THE SEIZURE OF THE SURVEILLANCE VIDEO BECAUSE THE TRIAL COURT ERRONEOUSLY FAILED TO REACH THAT ISSUE WHEN IT INCORRECTLY FOUND DEFENDANT LACKED STANDING. U.S. Const. amend. IV and XIV; N.J. Const. art. 1, par. 7.

Harris makes the following argument for our consideration:

> THE TRIAL COURT'S DENIAL OF DEFENDANT'S MOTION TO SUPPRESS WITHOUT AN EVIDENTIARY HEARING ON THE GROUNDS THAT DEFENDANT LACKED STANDING WAS ERRONEOUS.

Wright makes the following arguments for our consideration:

> POINT ONE
>
> THE TRIAL COURT ERRED BY DENYING DEFENDANT'S MOTION TO SUPPRESS THE ADMISSION OF THE SURVEILLANCE RECORDING EVIDENCE WITHOUT FIRST HEARING FROM DEFENSE WITNESS GREGORY JEWITT.

10

POINT TWO

INDICTMENTS 18-01-0031 AND 18-01-0033 ARE MULTIPLICITOUS, COUNTS WERE SUBJECT TO MERGER, ILLEGAL SENTENCES WERE IMPOSED, AND THE AGGREGATE SENTENCE IMPOSED IS EXCESSIVE.

Defendants' appeals were calendared back-to-back and we consolidate them for the purpose of issuing a single opinion.

II.

"[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007) (quotations omitted). We disregard only those findings that "are clearly mistaken." State v. Hubbard, 222 N.J. 249, 262 (2015). We review the trial court's legal conclusions on a motion to suppress de novo. State v. Gandhi, 201 N.J. 161, 176 (2010).

The Fourth Amendment and Article I, Paragraph 7 of the New Jersey Constitution, protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. "Under our constitutional jurisprudence, when it is practicable to do so, the police are generally required

to secure a warrant before conducting a search" of a residence. State v. Hathaway, 222 N.J. 453, 468 (2015). A warrant to conduct a search will not be issued except "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched" and the persons and things to be seized. U.S. Const. amend. IV; accord N.J. Const., art. I, ¶ 7; State v. Smith, 212 N.J. 365, 387 (2012).

To have standing to challenge a warrantless search under the Fourth Amendment, a defendant must have a legitimate expectation of privacy in the place searched or the item seized. Byrd v. United States, ___ U.S. ___, 138 S. Ct. 1518, 1526 (2018) (citing Rakas v. Illinois, 439 U.S. 128, 143 (1978)). "[N]othing short of ownership of, some possessory interest in, or control over the" property searched and the item seized will suffice to confer standing under the Fourth Amendment. Alston, 88 N.J. at 224. However, "the New Jersey Constitution's prohibition against unreasonable searches and seizures affords New Jersey citizens greater protection than that provided by the United States Constitution." State v. Randolph, 228 N.J. 566, 582 (2017); Alston, 88 N.J. at 225-228. There are two circumstances in which a defendant may challenge the lawfulness of a warrantless search under the State Constitution.

First, "a criminal defendant has standing to move to suppress evidence from a claimed unreasonable search or seizure 'if he has a proprietary, possessory or participatory interest in either the place searched or the property seized.'" State v. Johnson, 193 N.J. 528, 541 (2008) (quoting Alston, 88 N.J. at 228). A "participatory interest" in the property seized focuses on "the relationship of the evidence to the underlying criminal activity and defendant's own criminal role in the generation and use of such evidence." State v. Mollica, 114 N.J. 329, 339 (1989). A participatory interest "connotes some involvement in the underlying criminal conduct in which the seized evidence is used by the participants to carry out the unlawful activity." Id. at 340. Having a "participatory interest" provides "standing to a person who . . . had some culpable role, whether as a principal, conspirator, or accomplice, in a criminal activity that itself generated the evidence." Id. at 399-40.

A participatory interest exists in things that are intentional by-products of a defendant's criminal conduct or used by the defendant to effectuate the crime. See Mollica, 114 N.J. at 334-40 (finding defendant had a participatory interest in phone records of a co-defendant's hotel room, following gambling offenses, because defendant participated in the illegal bookmaking, which included using the co-defendant's hotel room phone); State v. Harris, 298 N.J. Super. 478, 481-

84 (App. Div. 1997) (finding defendant had standing to challenge the seizure of an answering machine, which contained a recorded telephone message between co-defendants, from a co-defendant's apartment where the victim was killed); State v. Biancamano, 284 N.J. Super 654, 659 (App. Div. 1995) (finding defendant had a participatory interest in the drugs he sold to a third party found on the third party).

"That evidence implicates a defendant in a crime is not, in and of itself, sufficient to confer standing." State v. Bruns, 172 N.J. 40, 58 (2002). "There also must be at a minimum some contemporary connection between the defendant and the place searched or the items seized." Ibid.

Second, "a defendant has standing if he 'is charged with an offense in which possession of the seized evidence at the time of the contested search is an essential element of guilt.'" Johnson, 193 N.J. at 541 (quoting Alston, 88 N.J. at 228). For this approach to apply, a defendant must be "charged with possession of the very item seized." State v. Curry, 109 N.J. 1, 8 (1987).

Having carefully reviewed defendants' arguments in light of the record and applicable legal principles, we agree with the findings of fact and conclusions of law set forth in the trial court's written opinion accompanying the September 28, 2018 order. We add the following comments.

It is undisputed defendants do not have ownership of, a possessory interest in, or control over, Jewitt's home, his surveillance cameras, or the video recordings created by those cameras. Defendants are strangers to Jewitt and have no identifiable interest in his property. They do not, therefore have standing to challenge the seizure of the video recordings under the Fourth Amendment.[5]

We also agree with the trial court that defendants do not have a proprietary, possessory, or participatory interest in Jewitt's home, his surveillance cameras, or the video recordings those cameras produced. Jewitt was not involved in defendants' criminal activity. No facet of defendants' crimes took place at Jewitt's home. The video recordings produced by Jewitt's surveillance cameras were not objects used by defendants in carrying out their crimes or intentional by-products of their criminal activity. While defendants'

---

[5] Defendants did not argue before the trial court they had standing to challenge the seizure of the video recordings under the Fourth Amendment. Rustin, however, cites the Fourth Amendment in the sole point heading of his brief. He does not provide any legal argument or cite authority suggesting he has standing under the Fourth Amendment. We could deem Rustin to have waived any argument he may have under the federal constitution. "[A]n issue not briefed is deemed waived." Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2020); Telebright Corp. v. Dir., N.J. Div. of Taxation, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief). We address Fourth Amendment standing for the sake of completeness.

criminal acts may have been recorded by Jewitt's cameras, the recordings were the product of Jewitt's installation and operation of security equipment intended to protect his home. The fact that the video recordings were created simultaneously with the shooting is immaterial, given defendants' complete lack of connection to the surveillance cameras. Nor do we find significant that the video recordings are the only evidence the State may have to establish some counts of the indictments. The relative value of the seized evidence is not relevant to the standing analysis.

We also are not persuaded by defendants' argument they have standing to challenge seizure of the video recordings because they were charged with possessory offenses. Defendants were not charged with possessing the video recordings. They were charged with possessing weapons used in the shooting. The weapons identified in the indictments are not the very items seized.

We decline defendants' invitation to create an extension of standing under the State Constitution to allow defendants to challenge the seizure of video recordings of public acts made by surveillance cameras owned by private parties not involved in the alleged criminal activity. Absent a holding from the Supreme Court to the contrary, defendants present no convincing argument our Constitution as presently interpreted provides inadequate protection to

16

defendants who commit crimes in public places within the purview of lawfully operating private security cameras.

We turn to Wright's appeal of his judgment of conviction and sentence. He makes several arguments which we address in turn.

A.    Multiplicity.

Wright argues the two indictments against him were multiplicitous in some respects. Count Six of the joint indictment charged Wright with second-degree unlawful possession of a 9mm Keltec handgun. Count Eight charged him with the same offense with respect to an unspecified handgun. Count One of the individual indictment charged Wright with first-degree unlawful possession of a 9mm Keltec pistol at the same time and place as alleged in the joint indictment. Count Two of the individual indictment charged him with first-degree unlawful possession of an unspecified weapon at the same time and place as alleged in the joint indictment. Wright argues these counts amount to duplicative charges arising from the same conduct. In addition, Wright argues the three conspiracy charges in the joint indictment were multiplicitous because each alleged conspiracy was part of one overall agreement or continuous conspiratorial relationship to commit aggravated assault.

"[T]he rule against multiplicity prohibits the State from charging a defendant with multiple counts of the same crime, when defendant's alleged conduct would only support a conviction for one count of that crime." State v. Hill-White, 456 N.J. Super. 1, 11 (App. Div. 2018), certif. denied, 237 N.J. 188 (2019). "[A] defendant may not be tried for two identical criminal offenses in two separate counts based upon the same conduct." State v. Salter, 425 N.J. Super. 504, 515-16 (App. Div. 2012). "A court may remedy multiplicity by setting aside all but one of the multiple convictions after the verdict, but the better approach is to address the issue before trial by dismissing the improperly duplicative counts of the indictment." Hill-White, 456 N.J. Super. at 12.

We disagree with Wright's argument the unlawful possession charges in the two indictments are multiplicitous. The joint indictment charges Wright with collectively, unlawfully possessing both the 9mm Keltec pistol and an unspecified handgun with his co-defendants. The individual indictment charges Wright with possessing those weapons individually while having previously been convicted of robbery. The conduct alleged differs. We see no error in charging Wright with those offenses.

With respect to conspiracy charges, "if a person conspires to commit a number of crimes, he is guilty of only one conspiracy, so long as such multiple

crimes are the object of the same agreement or continuous conspiratorial relationship." N.J.S.A. 2C:5-2(c); State v. Kamienski, 254 N.J. Super. 75, 113-15 (App. Div. 1992). We agree the three conspiracies of which Wright was convicted were part of a single agreement to engage in aggravated assault. However, merger of Wright's convictions on the conspiracy charges with his conviction of second-degree aggravated assault will eliminate any harm to him.

Wright also argues that during his plea allocution he admitted to possessing only the 9mm Keltec handgun. While he acknowledges he admitted Rustin also was in possession of a handgun during the shooting, he denies having admitted he had the ability to exercise dominion or control over the gun possessed by Rustin. He also denied having admitted to an agreement with his codefendants to possess multiple guns. He argues that he therefore should be convicted of only one count of a second-degree possession of a handgun for an unlawful purpose and one count of unlawful possession of a handgun.

We are satisfied that Wright's plea allocution supports the charges of which he was convicted. He admitted he and his codefendants agreed to arm themselves for an attack and that he and Rustin went to a vehicle to retrieve two handguns, one of which Rustin took into his possession. He also admitted he and Rustin thereafter fired shots into a vehicle with the purpose of causing

19

serious bodily injury to its occupant. Based on his admissions, Wright was in constructive possession of both handguns used in the attack and, under a theory of co-conspirator liability, was responsible for Rustin's criminal acts arising from possession of a handgun. N.J.S.A. 2C:2-6(b)(4); State v. Taccetta, 301 N.J. Super. 227, 243-44 (App. Div. 1997).

B.    Merger.

Wright argues the trial court erred by imposing sentences on the conspiracy, unlawful possession of a weapon, and possession of a weapon for an unlawful purpose counts of the joint indictment despite having merged those counts with the second-degree aggravated assault conviction.

In addition, Wright argues the trial court erred by imposing sentences on the second-degree unlawful possession counts of the joint indictment after imposing separate sentences on the first-degree unlawful possession of a weapon counts in the individual indictment. He argues N.J.S.A. 2C:39-5(j) creates an enhanced penalty for violation of unlawful possession of a weapon based on a prior conviction and is not a criminal offense separate and apart from unlawful possession of a weapon under N.J.S.A. 2C:39-5. Wright argues that while he can be convicted of the two first-degree unlawful weapon possession offenses

in the individual indictment, he cannot also of be convicted of the two second-degree weapon possession offenses in the joint indictment.

Finally, Wright acknowledges his two second-degree unlawful possession of a weapon counts, if not dismissed as multiplicitous, should not have merged with his second-degree aggravated assault conviction.

"Appellate courts review sentencing determinations in accordance with a deferential standard." State v. Fuentes, 217 N.J. 57, 70 (2014). "Merger is based on the principle that 'an accused [who] has committed only one offense . . . cannot be punished as if for two.'" State v. Miller, 108 N.J. 112, 116 (1987) (alteration in original) (quoting State v. Davis, 68 N.J. 69, 77 (1975)). Merger prohibits "double punishment for the same offense[,]" Davis, 68 N.J. at 77, and "implicates a defendant's substantive constitutional rights." State v. Tate, 216 N.J. 300, 302 (2013) (quoting Miller, 108 N.J. at 116).

"N.J.S.A. 2C:1-8(d) calls for merger when one offense is established by proof of the same or less than all of the facts required to establish the commission of another offense charged . . . ." State v. Mirault, 92 N.J. 492, 502 n.10 (1983). Our courts follow a "flexible approach in merger issues that requires us to focus on the elements of the crimes and the Legislature's intent in creating them, and on the specific facts of each case." State v. Brown, 138 N.J.

481, 561 (1994) (quotations omitted).  The Legislature may "split a single, continuous transaction into stages, elevate each stage to a consummated crime, and punish each stage separately." Davis, 68 N.J. at 78.  "The cases not requiring merger have had clear statutory differences illustrating legislative intent to fractionalize a course of conduct." Tate, 216 N.J. at 312.  The court must determine whether the two offenses are the same and therefore merge, or whether "each [offense] requires proof of an additional fact[,] which the other does not[,]" making merger inapplicable.  State v. Dillihay, 127 N.J. 42, 48 (1992) (first alteration in original) (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)).

The State disagrees with Wright's merger arguments, apart from its concession his two second-degree unlawful weapons possession convictions in the joint indictment should not have merged with the aggravated assault count.

We are persuaded by Wright's argument that all of the convictions in the joint indictment, other than the second-degree unlawful weapon possession convictions, should have merged with his second-degree aggravated assault conviction prior to imposition of sentence.  The court erred by imposing sentences on counts that were thereafter merged.  On remand, the court should

22

impose a sentence on only those convictions that survive merger. State v. Hill, 182 N.J. 532, 551 (2005).

We also agree Wright's second-degree weapon possession convictions do not merge with his second-degree aggravated assault conviction. See State v. Deluca, 325 N.J. Super. 376, 392-93 (App. Div. 1999), aff'd, 168 N.J. 626 (2001). If the joint indictment was the sole indictment at issue, Wright would be sentenced on those convictions. However, in light of the fact that Wright was convicted of two counts of first-degree unlawful possession of a weapon pursuant to N.J.S.A. 2C:39-5(j), which enhances the penalty for the offense, but does not create a separate offense, it would be multiplicitous to sentence defendant for both the second-degree convictions in the joint indictment and the first-degree convictions in the individual indictment. The convictions of the greater degree of the offense should survive. State v. Hammond, 231 N.J. Super. 535, 545 (App. Div. 1989). On remand, the trial court should dismiss the two convictions of second-degree unlawful possession of a weapon in the joint indictment consistent with this opinion.[6]

---

[6] Because the judgments of conviction in Rustin and Harris merge their convictions of second-degree unlawful possession of a weapon with their convictions of second-degree aggravated assault, we remand those appeals for resentencing. In addition, to the extent the trial court intended to sentence

C.    Illegal Sentences.

Wright argues the five-year sentences he received on the certain persons convictions were illegal because N.J.S.A. 2C:39-7(b) provides that any sentence on those counts must include a period of parole ineligibility of at least five years. In addition, Wright argues that his judgment of conviction refers to N.J.S.A. 2C:16-1, the bias crime statute. Wright, however, was not charged with a bias crime in either indictment. The reference appears to be a typographical error.

The State agrees on both points. On remand, the court will impose a five-year period of parole ineligibility on Wright's certain persons convictions in the individual indictment. In addition, the judgment of conviction will be amended to remove reference to the bias crime statute.[7]

D.    Excessive Sentence.

We reject Wright's argument that his sentence is excessive. We review sentencing determinations for abuse of discretion. State v. Robinson, 217 N.J. 594, 603 (2014) (citing State v. Roth, 95 N.J. 334, 364-65 (1984)). The

_____

Rustin and Harris on any counts merged with their second-degree aggravated assault convictions, we direct the trial court to sentence Rustin and Harris only on the convictions that survive merger.

[7] On remand, the court shall also impose a five-year period of parole ineligibility on Rustin's certain persons convictions.

sentencing court must "undertake[] an examination and weighing of the aggravating and mitigating factors listed in [N.J.S.A.] 2C:44-1(a) and (b)." Roth, 95 N.J. at 359; State v. Kruse, 105 N.J. 354, 359 (1987). Furthermore, "[e]ach factor found by the trial court to be relevant must be supported by 'competent, reasonably credible evidence'" in the record. Fuentes, 217 N.J. at 72 (quoting Roth, 95 N.J. at 363).

We accord deference to the sentencing court's determination. Id. at 70 (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). We must affirm Wright's sentence unless

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (alteration in original)(quoting Roth, 95 N.J. at 364-65).]

We are satisfied the judge's findings and balancing of the aggravating and mitigating factors are supported by adequate evidence in the record, and Wright's sentence is neither inconsistent with sentencing provisions of the Code of Criminal Justice, except as noted previously, nor shocking to the judicial

conscience.  See Ibid.; State v. Bieniek, 200 N.J. 601, 608 (2010); State v. Cassady, 198 N.J. 165, 180-81 (2009).

To the extent we have not specifically addressed any of defendants' remaining arguments it is because we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

The September 28, 2018 order of the Law Division is affirmed.  The matters are remanded for resentencing consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2241-18T2